Client, as you know from the reading of the facts, works for the Teamsters and travels from various venues to set up and tear down whatever displays... No, he doesn't work for the Teamsters. Well, you're right, he doesn't work for the Teamsters. Okay. The guy from Douglas E. Stevens, who is a Teamster, is paid by the Teamsters, correct. But the Teamsters are the instrument that send them to these jobs. When he works for RES, as he had done previously, pursuant to the record, he's an accepted employee. So there's no question he's an employee. The issue this afternoon is why was he on the driveway at the Doubletree Hotel, subject to the black ice which caused him to fall and suffer a spiral fracture to the femur? I submit that like Bomarino or Bomarino, yeah, Bomarito, thank you, this man was at that location because it was at the direction of the employer. Hang on, isn't there a distinction? Yes, I think you can legitimately and logically argue he was there at the premises or the site at the request of the employer. However, he didn't, he wasn't directed, as I understand it, by the employer to park at a certain place. He parked in a public parking lot. And as you know, generally, injuries sustained on the employer's premises are considered a rise out of the course of employment. But where the employee slips and falls at a point off the employer's premises, which is clearly he wasn't on the premises when he was injured. Correct, Your Honor. Then he needs to fall under other exceptions. Right. We would concede, would we not, he didn't fall on the employer's premises. No, he did not. Okay. But he was directed to park where he parked, in the William Street Garage. They facilitated that by him exposing his Teamsters card and gaining access to the parking lot for free and parking on the first floor. There was testimony from the man who was assigned by the Teamsters to work at the Donald E. Stevens Center. He would be the man who obtained the order from the bosses there to bring in so many Teamsters. And he testified that when anybody is assigned to work there, they are to come in a certain door by his office where his desk was. But they had to park nowhere near the Donald E. Stevens Center but in the William Street parking garage. Two other lay witnesses, co-workers of my client, testified to the same thing. And in fact, they testified that they recently were given certain kinds of passes to be used as opposed to the union card. So the only reason my client was at that location at the time he fell was because he had parked his car where he was directed by the powers that be at the Donald E. Stevens Center, was walking from the parking lot with his work equipment and his lunch, and he slipped on black ice and fell. So the question, is this case covered, is it compensable, using the logic of Bomarito, or do we say it's excluded because of Reed and Hess versus the Industrial Commission? Those two cases, I believe, are distinguishable because in Hess and in Reed, neither one of those employees was directed to go to a particular parking lot. This is more akin to the holding in Bomarito, where this employee in Bomarito was required to go through the alley to get to the rear door to enter the employer's premises. Well, in this case, did the employer dictate the route or which sidewalk or which entrance the employee claimed was supposed to enter the parking lot? There was testimony. There's only one way to get from the Williams Street garage to the Donald E. Stevens Center and the doorway where he had to enter. That was never an issue in terms of deviation from the route or, as in the case cited, the telephone case, where it's in the Woodfield Center and there's four different escalators and you have multiple. So what I'm saying here, the Respondent – well, in Bomarito, it looks like the facts were that the employee or the courthouse created a special risk or hazard because the employee was forced to dodge traffic and debris in order to gain admission to the place of work. Here, the injury occurred leaving the parking lot, but not by using any specific route directed by the Respondent. There were no other things going on, was there? Your Honor, first of all, if I may, in a certain sense, challenge your reading of Bomarito. Bomarito didn't turn on the question that he was going through crater-filled alleys. I believe that the logic and the rule of law as enunciated in that case by the Supreme Court stood for the proposition that whenever an individual is directed by their employer to follow a certain path into their workplace and to park at a certain designated area, and if as a result of traversing that route, the most reasonable route, if you will, they come across something that is a greater risk to them because they're there because of the nature of their employment and they get injured, that's a compensable claim. Greater risk to them or greater risk to the public? Greater risk to them. Greater risk to them is the general rule of the public exception is changed because they're there given the nature of the directive of the employer. So it's an absolute then. You're saying that any time somebody goes to a job site required by the employer, regardless of what happens between the garage and the place of work, public sidewalk, anything else, that ends the ballgame. The employer is automatically liable for what happens. That seems to be what you're saying. Well, what I'm saying, Your Honor, is the fact that in this, for example, if this guy was to park across Grant Park, and he's directed to park in the Millennium Parking Garage underground, and he has to amend himself to the IBM building on Randolph Street, and he chooses which way to go, whether it's across the grass or a walkway or gets a Segway or whatever, that would be a different situation because of the freedom of choice. Here, there is only one route to get directly from the parking garage to the Donald E. Stevens Center. It's not like he's got a multiplicity. In fact, when asked directly whether or not there was an alternative route, he said there's a Pedway that you could take, but it was closed at this hour. The other two witnesses testified that in every instance when they went to work there, they were directed to park in the Williams Street Garage. The man who assigns the job, the foreman, if you will, the lead man, he testified that, yes, it is the policy of the owners of Donald E. Stevens Center that they park in the Williams Street Garage, and they get in there for free. They don't have to pay because they show their Teamsters card. And then the other two witnesses testified that they're given identification. Now, that goes to they're supposed to park at the Williams Street Garage, but getting from the garage to the Rosemont, there's only one route? Yes. From the Williams Street Garage? Yes. You cannot go any other way. Well, there's buildings on each side. You park in the Williams Street Garage, and there is only one way you can get to the Rosemont. Yeah, there's a sidewalk that runs along parallel to that street, and that's the route, and that's the route he took. And there was no deviation? He didn't go into some? No, no, no, no. But, see, with Bomarito, it was a route issue. Right.  There were two alleys. It was a route issue. And the fact is that the assumption was that most people, if they saw that route, would try to find another route to get there. Correct. That's why we were talking about the trash in Bomarito, quite frankly. And so the bottom line, it helped to say, didn't have a choice here. I had to go through that route. Even though there could be other routes in Bomarito, I had to go through that route, and that was at a risk of injury that I had. It's compensable because the employer told me to go through there. Well, an equal argument in Bomarito could have been that she should have seen that there was an open and notorious hole there. It wasn't dark. It wasn't, you know, it was during the day, so how could she step in this pothole when they could have seen it, open and notorious? There are various arguments, but the issue is this. Is an individual, in the course of his employment, when directed by the employer to park in a particular location, and then traverse the most direct route from the parking garage to the locale where he's going to be? Wait, wait, wait. The most direct route, because that assumes that there's some indirect route. There is. You said, are you disputing the fact that the claimant himself testified, as I'm looking at it now, there's two ways to travel from the Williams Street garage, a covered pedestrian overpass. Right. Or the ground level route. Right. So. That's true. He wasn't, to answer his question, there wasn't only one route into the building. No, but the pedestrian, the covered route was closed. He testified. Okay, well. So it didn't exist for all intents and purposes. Do we know the Respondent would know that necessarily in the evidence? Here's the point. It sounds like you're arguing positional risk here. Oh, I'm the contrary. I'm not arguing the Brady situation whatsoever. This isn't an instrumentality that's a stranger to the equation. This isn't a situation where, like in Brady, the guy's sitting at his drafting table drawing lines, and a truck crosses the center line on Route 53, goes down 38 feet, and then lands into the side of the building, disemboweling the guy. Here what we have is we have a boss, if you will, in the most generic sense, says, Bob, you park over there. Everybody admits that's where they park. That's where they're required to park. You park over there. You don't have to pay. You get in for free because you're working here. When you park your car, then you walk back the block that adjoins these two places, the Williams Street Garage and the Downey's events. So he was there because, as you said, he was at the location where the accident occurred because that was his job. Exactly. That doesn't sound like positional risk. No. No, because positional risk assumes. Look, if we look at the positional risk case, and we all know about Brady. That's the most recent one. But, for example, in Campbell 66, a very old case where the guy's driving his tractor-trailer through Kansas or Nebraska, and along comes a tornado and knocks him over. The respondent in that case argued positional risk. And in that case, the Supreme Court said, wait a minute. It's an incident to his employment. He was there at that location carrying out the mandate of his employer. Just like Bob Passeri was doing. He was there. He was at a location designated by the employer. And if he had traversed that street and went in and got his assignment and his forklift, he'd have worked. And we wouldn't be here. But because of the black ice and the fact that he was there because the employer said you must park over there, that creates a risk greater to him than the general public. Maybe if he wasn't there at that hour, maybe if he didn't have to start so early, the sun would have come up, melted the ice, and we wouldn't be here either. But the question is, if that's not a compensable case, doing what your master tells you, then we've got a lot of cases, including this Northwestern case and a few others, that make no sense. Maybe I'm not quite grasping the essence of your point. You are, in essence, saying because the employer directed him to show up and park in this garage, if he's injured after that, that's the ballgame. Even if he falls in a public file, that has to be your position. Nothing else matters. Well, in this instance, that is true. Because in my view, this guy is a quasi-traveling employee. The place of business for the assignment for his jobs is at McCormick Place. To obviate the need to go down to McCormick Place at an early hour in the morning and then go back to the Donald E. Stevens location, the Teamster guy calls him up at 4.30 or 5 o'clock in the evening and says, Tomorrow, Bob, you go to the Donald E. Stevens Center. Okay, great. He drives his car there. He parks in the designated parking spot. He gets in for free because they give him this accommodation because he's working at the Donald E. Stevens Center. He gets out of his car. He's got his tools and his gloves and so on. He walks to the most direct route, parallel to the street, directly going to the Donald E. Stevens. He encounters this black ice, falls, and has a spiral fracture. The question is, why was he there? Was he there for a whim? Was he there on a lark? Was it a personal comfort thing? Was it a deviation? No. He was there because he's directed by his employer to park in that lot and then to come into the building into this location. That's what makes it. Where did the general public go? How did they get to that? Well, they have to traverse the same thing, but at that hour of the day, there's no general public there because nobody's got any expositions going on. The general public isn't there. The general public will use the same parking lot. Of course, they've got to pay. They have to get a time card that says how long you've parked, and then you pay the freight. But the fact of the matter is, he's where he is when he falls because of the direction of his employer. We don't know what benefit this employer gains from him having to park in that lot, but the fact of the matter is, all of the testimony is, he's required to park in that lot. And as a consequence, to get from parking lot to work site, he's got to traverse this way He's exposed to a greater risk on the end of the public then. Yes, Your Honor. Why? Because Is he taking the same route into the building? Well, then in the absence of any traveling employee case, we would say that anybody who's on a public way or in any other fashion is subject to the same risks as the general public, and unless you can get safely to your workplace, you're not employed. I mean, you're not, it doesn't arise out of employment. And we know that there's a myriad of cases that don't hold to that proposition, Homer being one of them. Can I ask you two questions? Yes, sir. How would you distinguish this case from S, which was the Supreme Court case where you had a plant on one side of the street, a parking lot on the other side of the street, and the employee was struck by a car walking from the parking lot to the plant as he crossed a thoroughfare? I wouldn't have taken that case. The Supreme Court said no recovery. Right, I wouldn't have taken that case. The employer doesn't control the street. Right. It's a Brady situation. Okay. So what's the difference between the street and sidewalk? The difference between the street and the sidewalk is that the condition of the driveway where he fell was an inherent risk because of the black ice, and he was exposed to that risk because he was following the mandate of the employer by parking in the Williams Street garage and then taking that route that was directly to the Donald E. Stevens. Had they not told him to park there, if he had choices to park wherever he wanted, I'm not here. Time's up, counsel. Do you have time? Can I ask one more question? The case that you're talking about is a peculiar case, but it's one we get not infrequently. When these people work out of a union hall, who's their employer? Well, you know, that's an interesting conundrum because the fact of the matter is he is an employee if he's, as the man testified, he's in this computer. He's got an employee number. So there is the danger here. Donald E. Stevens' center, RES, could eliminate coverage of the Workers' Compensation Act for a guy like Bob Passeri simply by removing the mandate of parking in that lot. If they were to take the position that you park wherever you want. Oh, yes, for a different reason. I asked who was the employer because you raised the issue of the traveling employee. But if Donald E. Stevens is the employer and not the Teamsters, then he was working at the employer's premises, in which case he's not a traveling employee. Correct. And that's why in my brief and in my argument I'm not suggesting he is a traveling employee. I call him a quasi-traveling employee, and it's a hybrid situation. But again, common sense. Why was he on the driveway that morning going to the Donald E. Stevens' center? Because he was told to park in that garage and then come into work, and he had to traverse that just like Marmarino and the other cases. Thank you. Okay. Counsel, please. Thank you, Your Honors. May it please the Court, Mr. Alexie. My name is David Polis, and I represent Rosemount Exposition Services. I first want to point out that I did not have the benefit of drafting these briefs or having the previous victories or trying this case against Mr. Alexie. I've taken it down after the briefs have been filed, so I can't take credit for them. Are you familiar at all with the cases he's cited? I am. Well, Marmarino is an interesting case because, as you pointed out. In the course of your discussion, would you tell us why Marmarino does not apply? As you pointed out in your questioning, Your Honor, the Court itself said, we think the special risks or hazards encountered by the claimant as a result of the Respondent's order to enter through the rear door only must be deemed to arise out of her employment. Moreover, the claimant's obedience to that order operates to place the claimant's within the scope of her employment. And the Respondent herein has created a situation whereby the claimant was forced to dodge traffic and debris in order to gain admission to a place of work. The Respondent cannot seriously expect to disclaim responsibility for the claimant's injuries simply because the claimant was unable to traverse this obstacle course successfully. I would submit to you that this is a very different case. We're in Rosemount. I'll get back to the traveling employee or the quasi-traveling employee, as Mr. Alexia suggested. But we're in Rosemount. The man is directed to park in a public lot where the Teamsters do have access and are allowed to get in. He's able to traverse across River Road, but before he gets there, he falls on a sidewalk. General public, the restaurant patrons, the hotel patrons, the conventioneers, the exhibitors, everybody can park in this parking lot. Everybody traverses this public sidewalk. And I would submit to you that if they are allowed to, if a petitioner is allowed to have this be covered, we no longer have an arising out of him. It is, unless you take the position of positional risk where he's merely there because he has to work, then we don't have to have any greater exposure for the employer or for the employee or benefit for the employer other than the man coming to work. In this case... Who owns the sidewalk? I'm sorry? Who owns the sidewalk? The sidewalk is owned by the village. By the village? Who owns the parking lot? It's owned by the convention center. The convention center? Is the sidewalk attached to the parking lot? No, sir. Are you sure? I believe it's outside of the parking lot. I don't know. I checked a few out there, and the sidewalk is pretty close to the, right across the street from the Rosemont Convention Center. But the sidewalk is pretty close to the parking lot. It is, but it's also... What would be the circumstance if the convention center owned that sidewalk? Is there a different light on this then? I don't believe so because the Rosemont Exposition Center doesn't own the sidewalk. Rosemont Exposition Services doesn't own the sidewalk. We're not in control of it. We don't maintain it. We haven't paid to... Do they own the parking lot? No. That's separate and apart from the Exposition Center. It's Rosemont Exposition Services that Mr. Passeri worked for. So they do not own any of the premises that Mr. Passeri was on that day because he never made it to work to check in. It's a business that puts on the conventions, right? Exactly right. He goes there to load and unload displays and set up conventions. So they're not in control of the parking lot? The Respondent didn't control the parking lot or the sidewalk. No, sir. Or the convention center. Or the convention center. They're merely employees that are there. In the other cases that were cited by Mr. Alexie, although they're not dispositive here because they are commission cases, for example, Talman, they actually clear away the public walk the Respondent does. And it was noted that they had cleared away ice and snow just before the Petitioner had, the employee had walked on that area. And it had become a matter of courtesy by the employer. They had undertaken that exercise. In this case, there's nothing like that. Who owns Rosemont Exposition Services? It's an employment company that provides employees to set up displays. Who owns it? Village of Rosemont? No. It's a privately owned company. Privately owned? Yes. Who owns the parking lot? I don't know, Your Honor. Are they owned by the same entities? No. They are not owned by the same entities. Okay. In this case, Mr. Alexie has attempted to fashion the Petitioner as a traveling employee. I would submit to you that a traveling employee goes to different locations for the same employer. In this case, Rosemont Exposition Services hired this man out of the hall, and he was told to show up to one place. He's not in the manner of doing his job appearing at different places. I don't believe that the traveling employee exception or expansion of the Workers' Compensation Act would apply to Mr. Passeri in this case. Because his duties don't require him to travel away from the employer's premises. No. Meaning where he was, that's the employer's premises. He goes there every day. That's exactly right. He's not traveling away. That's exactly right, Your Honor. It's no different than any other employee traveling to their place of business. Right. And it remains the same. So in that case, we've got a situation where, again, a rising auto disappears. Merely because the person has to show up at a designated place and time, as soon as they park in counsel's argument, they are benefiting the employer because they're showing up to work, and they are underneath the Workers' Compensation Act and can have a compensable claim by falling on a sidewalk that was offering the same benefits and exposures to the general public as to this employee. I wanted to reiterate in the cases that were cited by counsel that many of them are parking lot cases as opposed to sidewalk cases. Homerding, which counsel argued and won, is a case where the employee was required to traverse a back parking lot, which was required by the employer multiple times in order to get her materials. And it was noted by the court that the employer also paid to maintain that parking lot. In this case, we don't have that situation. Counsel had pointed out that there was only one way to get in and get out. It is true and uncontradicted. There is a pedway that was closed that was unable to be used. But there are multiple doors within which to enter the Stevens Convention Center, and any of those doors, it's uncontroverted in the evidence,  the employer in order to be given the job assignment. But is there only one route to those multiple doors? This is the most direct route. But there is another route. I would submit to you that there are other routes. He could have come out of a different doorway in the parking lot and would have come out in a different place on the sidewalk. Different part of the sidewalk, right. But there is only one sidewalk from the Williams garage to the center. That's correct. There was only one sidewalk on that side, correct. Right. And then he has to traverse River Road to get to the Stevens Center. You mean he has to cross River Road? Yes, sir. Absolutely. I would submit as attorney for the respondent, that this is a case that clearly rests on the idea that the employee off-premises is not entitled to workers' compensation benefits when on a general, when exposed to the same risks and hazards as the general public. The case is that council sites don't serve to create a manifest weight argument in this case, and we ask that it be affirmed. Thank you, counsel. Mr. Votto. Thank you, Your Honor. One last gasp. Litchfield Health Care Center versus the Industrial Commission. This court, 2004. And in that instance, claimant was walking from the parking lot to the building when she tripped over an uneven part of the sidewalk. In finding the accident compensable, the court highlighted the significance of the hazardous condition, an uneven sidewalk. Here, black ice. However, in Litchfield, wasn't that an injury that occurred on the employer's premises? No. It was not? No. Okay. The case does not merely involve the risks inherent in walking on a sidewalk, which confront all members of the public, when, as in this case, an injury to an employee takes place in an area which is the usual route to the employer's premises. Bob Passeri, on the morning of February 22nd, four years ago, going to the Donald E. Stevens Center. And the route is attended with a special risk or hazard, black ice, not easily distinguishable. The hazard becomes part of the employment. Special hazards or risks encountered as a result of using a usual access route satisfy the arising out of requirement of the act. That's a 2004 opinion from this court. I submit to you, Bob Passeri deserves to enjoy the benefits and protection of the Illinois Workers' Compensation Act. Litchfield, has the claimant already started work? I beg your pardon, sir? In Litchfield, has the claimant already started work? No, I don't believe so. Okay. He was parked in a parking lot and then was walking to the... The court will take the matter under drive disposition.